[Cite as *State v. Safo*, 2022-Ohio-4746.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

STATE OF OHIO,                           :

    Plaintiff-Appellee,          :

                               No. 111381

    v.                                      :

BRIANA SAFO,                             :

    Defendant-Appellant.      :

---

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** December 29, 2022

---

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-21-662091-A

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Christopher Woodworth, Assistant Prosecuting Attorney, *for appellee.*

Allison F. Hibbard, *for appellant.*

LISA B. FORBES, J.:

{¶ 1} Briana Safo ("Safo") appeals her assault and obstructing official business convictions. After reviewing the facts of the case and pertinent law, we affirm the trial court's decision.

## I. Facts and Procedural History

{¶ 2} At approximately 1:00 a.m. on July 31, 2021, East Cleveland Police Officer Travis Thompson ("Off. Thompson") was on patrol duty when he saw a vehicle driving on Superior Avenue faster than the 25 m.p.h. speed limit. Off. Thompson initiated a traffic stop as the car turned onto Euclid Avenue. The driver did not stop, continued to speed, lost control of the car, and crashed into another vehicle. As Off. Thompson was attempting to arrest the driver, Safo arrived on the scene, parked her car in the middle of the street, and approached Off. Thompson. Off. Thomson instructed Safo to do two things: stand back and move her car from the middle of the street. Safo did not follow either order and instead began yelling at Off. Thompson. Off. Thompson attempted to arrest Safo for obstructing official business, and as he grabbed her arm to handcuff her, she punched him. The incident was captured on video from Off. Thompson's body camera.

{¶ 3} On August 31, 2021, Safo was charged with assault in violation of R.C. 2903.13(A), a fourth-degree felony, with a furthermore clause indicating that the victim was a peace officer; and, obstructing official business, a fifth-degree felony, in violation of R.C. 2921.31(A), with a furthermore clause indicating that Safo "created a risk of physical harm to [Off.] Thompson."

{¶ 4} After a bench trial, on February 24, 2022, the court found Safo guilty as indicted and sentenced her to one year of community-control sanctions. It is from these convictions that Safo appeals.

## II.  Trial Testimony

{¶ 5}  Off. Thomson testified that he was on patrol duty on the night of July 30, 2021, into the morning of July 31, 2021, in East Cleveland.  Off. Thompson testified as follows about the events giving rise to the incident at issue in this case:

> So I was in my patrol car sitting behind a plaza near Euclid and Superior just to the east of Euclid.  And I had my window down, and I heard tires squealing coming from the east of my direction.  And then when I looked out the window, I saw a car driving west on Superior at what I visually estimated to be about 60 miles per hour.  The speed limit up there is 25.
>
> When the car passed me, I pulled out of the parking lot and tried to get behind the car.  The light at the intersection of Euclid and Superior was red.  He made a right turn onto Euclid from Superior, didn't stop for the red light before making the turn.  And we were both on Euclid.  I got behind him, turned my lights on, tried to make a traffic stop.  He didn't stop.  He instead accelerated.
>
> He was going east on Euclid, and then he tried to turn right to go south on Forest Hills Boulevard at a high rate of speed.  He lost control of the vehicle.  He crashed into a concrete barrier that separated the north and south lanes on Forest Hills Boulevard.  He drove over the barrier and crashed into a Toyota Camry that was coming northbound stopped at the red light, and the impact caused the Camry to ricochet into a traffic box or an electrical box that controlled the traffic signals, and that disabled the traffic lights.

{¶ 6}  Off. Thompson testified that he ordered the driver, Bilyion Sims ("Sims"), "out of the car at gunpoint and had him lay on the ground.  He complied, and I approached him to place him in handcuffs while he was laying on the ground."  Off. Thompson testified about what happened next:

> While I was attempting to put [Sims] in handcuffs, [Safo] approached the scene.  She parked her car * * * in the southbound lanes of travel on Forest Hills Boulevard right next to my patrol car.  So she was essentially blocking the lane.

And she approached me and told me not to do that to her brother while I'm trying to place him in handcuffs. I ordered her several times to get away from me or to back up and to move her car out of the roadway. And I was able to put [Sims] in the handcuffs, and I was still ordering her to move her vehicle at which point she refused. She told me not to talk to her because she's grown.

And at that point, I believe my backup arrived * * * so she was able to watch over [Sims] while I attempted to put [Safo] in handcuffs for obstructing official business.

{¶ 7} Off. Thompson testified that he was the only officer on the scene until backup arrived. According to Off. Thompson, "[i]t was a very high-stressed situation. It was a little out of control. There was a lot going on, and there's people around me. [Sims] just ran from me. I don't know what he was running for. I don't know what all these people are trying to do, you know, coming up." Despite Off. Thompson telling Safo "multiple times" to back up and move her car, she "still hadn't done so. She was yelling, and I was trying to get her attention and yell over her and [tell her to] move her car or it would be towed. And at that point, she decided she didn't want to move her car. She told me not to talk to her."

{¶ 8} Off. Thompson grabbed Safo's arm because he "was intending to place her under arrest." Asked what occurred next, Off. Thompson stated, "She punched me in the face, right on my eye. * * * She punched me several times and caused a black eye, cause me to have a black eye under my right eye." Off. Thompson testified that he "had to use force * * * to get her to stop trying to punch me, and I was able to take her to the ground." After Off. Thompson got Safo on the ground, he "put her in handcuffs without any other force being used."

{¶ 9} According to Off. Thompson, while he was handcuffing Sims, he could hear Safo, but he could not see her until after Sims was handcuffed. He did not know at the time that Safo had a cell phone in her hand and may have been recording the events unfolding.

{¶ 10} Off. Thompson's body-cam video of the incident was played during trial. After watching this video in court, Off. Thompson agreed that, while he was attempting to handcuff Safo, he pulled her hood over her head. Specifically, Off. Thompson testified as follows:

> I grabbed her arm which her phone was in because it was the closest arm to me. I was going to put them behind her back. She then turned and punched me with her right arm because the cell phone was in the left arm. She turned, punched me several times with the right arm * * *. And at that point, I guess, in the course of it, I pulled her hood over her head. I didn't realize at the time that's what I was doing.
>
> * * *
>
> I think it kind of just kind of happened. There was a lot of flailing around going on, and then her hood just came over her head. That was not my intention to pull her hood over her head.

## III. Law and Analysis

{¶ 11} Safo raises four assignments of error for our review, which we address out of order for ease of discussion.

> I.    Trial Counsel was ineffective for failing to file a motion to suppress.
>
> II.    Trial Counsel was ineffective for failing to call Tenisha Safo as a witness on behalf of the defense.
>
> III.    The verdict as to Count One (1) cannot be upheld because the evidence presented at trial did not prove her guilt beyond a reasonable doubt.

IV.    The verdict as to Count Two (2) cannot be upheld because the evidence presented at trial did not prove her guilt beyond a reasonable doubt.

## A. Sufficiency of the Evidence and Manifest Weight of the Evidence

{¶ 12}  Safo's third and fourth assignments of error challenge the sufficiency and manifest weight of the evidence presented at the bench trial.  "[A]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259, 273, 574 N.E.2d 492 (1991). "In essence, sufficiency is a test of adequacy.  Whether the evidence is legally sufficient to sustain a verdict is a question of law." *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997).

{¶ 13}  A manifest weight of the evidence challenge "addresses the evidence's effect of inducing belief.  * * * In other words, a reviewing court asks whose evidence is more persuasive — the state's or the defendant's?" *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1264, ¶ 25.  "When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as the 'thirteenth juror' and disagrees with the factfinder's resolution of the conflicting testimony." *Thompkins* at 387.  Reversing a conviction under a manifest weight theory "should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction." *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

### 1. Assault of a Peace Officer

{¶ 14} Pursuant to R.C. 2903.13(A), "[n]o person shall knowingly cause or attempt to cause physical harm to another * * *." R.C. 2903.13(C)(5) states that "[i]f the victim of the offense is a peace officer * * *, while in the performance of their official duties, [the] assault is a felony of the fourth degree."

{¶ 15} In the instant case, Off. Thompson's testimony established that Safo punched him in the face "multiple times" while he was on duty as a patrol officer, causing him to have a black eye. The body-cam video played during trial is short and chaotic, and it fails to show whether Safo punched Off. Thompson. However, that conclusion is not inconsistent with Off. Thompson's testimony. Ohio courts have consistently held that the "testimony of a single witness, if believed by the finder of fact, is sufficient to support a criminal conviction." *State v. Booker*, 10th Dist. Franklin No. 15AP-42, 2015-Ohio-5118, ¶ 18.

{¶ 16} Upon review, we find that the state presented sufficient evidence to convict Safo of assaulting a police officer. Furthermore, this evidence was undisputed, and we find that Safo's conviction is not against the manifest weight of the evidence. Accordingly, Safo's third assignment of error is overruled.

### 2. Obstructing Official Business

{¶ 17} Pursuant to R.C. 2921.31(A), "[n]o person, without privilege to do so and with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity, shall do any act that hampers or impedes a public official in the performance of the public official's lawful

duties." R.C. 2921.31(B) states that "[i]f a violation of this section creates a risk of physical harm to any person, obstructing official business is a felony of the fifth degree."

{¶ 18} Our review of the body-cam video played at trial shows that when Off. Thompson was handcuffing Sims, he was on the ground in between Sims's vehicle and the vehicle that Sims crashed into. Headlights from cars travelling on the street are seen throughout the incident. Safo, with a cell phone in her hand, is standing over Off. Thompson's right shoulder. Though Safo only comes into view when Off. Thompson turns his body toward her, it is clear that she is screaming at him. Further, Safo parked her car in the road, creating an additional traffic hazard while Off. Thompson was effectuating the arrest of Sims. Safo refused to move her car, despite Off. Thompson repeatedly ordering her to do so.

{¶ 19} Upon review, we find that Safo's conduct, as testified to by Off. Thompson and showed in his body-cam video, hampered or impeded him from performing his duties that night. He told her multiple times to stay back and move her car from the middle of the street while he was arresting Sims. It was a chaotic and potentially dangerous situation, and she distracted him from performing his job. This evidence is sufficient to support a conviction for obstructing official business, and this is not a case where the evidence weighed so heavily in favor of acquittal that the court lost its way as the factfinder in convicting Safo. Accordingly, Safo's fourth assignment of error is overruled.

**B. Ineffective Assistance of Counsel**

{¶ 20} To succeed on a claim of ineffective assistance of counsel, a defendant must establish that his or her attorney's performance was deficient and that the defendant was prejudiced by the deficient performance. *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). However, "a court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance." *Id.* at 697. *See also State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 3743 (1989).

### 1. Failure to File Motion to Suppress

{¶ 21} "'Failure to file a suppression motion does not constitute per se ineffective assistance of counsel.'" *State v. Madrigal*, 87 Ohio St.3d 378, 389, 721 N.E.2d 52 (2000), quoting *Kimmelman v. Morrison*, 477 U.S. 365, 384, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986). "Rather, a trial counsel's failure to file a motion to suppress constitutes ineffective assistance of counsel only if there is a reasonable probability that, had the motion to suppress been filed, it would have been granted and that suppression of the challenged evidence would have affected the outcome of the case." *State v. Antio*, 8th Dist. Cuyahoga No. 110658, 2022-Ohio-1398, ¶ 19.

{¶ 22} Upon review of Off. Thompson's testimony at trial, which was substantially consistent with his body-cam video of the incident, we find that Safo has failed to show a reasonable probability that a motion to suppress, had one been filed, would have been granted. As discussed in our analysis of Safo's third and

fourth assignments of error, the evidence presented at trial showed that Safo obstructed official business and assaulted a police officer. Nothing in the record suggests that Off. Thompson effected an illegal arrest of Safo, and we find that filing a motion to suppress in this case would have been futile. Accordingly, Safo's first assignment of error is overruled.

## 2. Failure to Call Tenisha Safo as a Witness

{¶ 23} "Generally, counsel's decision whether to call a witness falls within the rubric of trial strategy and will not be second guessed by a reviewing court." *State v. Treesh*, 90 Ohio St.3d 460, 490, 739 N.E.2d 749 (2001). This court has held that "the mere failure to call witnesses does not render counsel's assistance ineffective absent a showing of prejudice." *State v. Scruggs*, 8th Dist. Cuyahoga No. 107860, 2019-Ohio-3043, ¶ 39. Furthermore, it well-established that the failure to call a witness for a trial "is not a substantial violation of defense counsel's essential duty to his client in the absence of any showing that the testimony * * * would have assisted the defense to the indictment." *State v. Reese*, 8 Ohio App.3d 202, 203, 456 N.E.2d 1253 (1st Dist.1982).

{¶ 24} In the instant case, Safo argues that trial counsel was ineffective for failing to call Tenisha Safo ("Tenisha") as a defense witness. According to Safo, Tenisha would have testified that "she was on the phone with her daughter, that they were concerned that * * * Sims would not get home safely, that Officer Thompson was rude to her about * * * Safo's pregnancy, that the following day other officers apologized for Officer Thompson's behavior, and lastly that he did not have a black

eye." Safo does not offer an affidavit or other sworn testimony attesting to what she opines Tenisha would have said had she been called as a witness. Our review of the record shows that Tenisha, who is Safo and Sims's mother, spoke at Safo's sentencing hearing and said these very things. However, statements made during the penalty phase of a trial, after the defendant's guilt has been established, are not sworn testimony. *See State v. Williams*, 7th Dist. Mahoning No. 11 MA 185, 2014-Ohio-1015 ("Appellant's opportunity at sentencing to make a statement concerning his remorse or to raise mitigating factors relevant to sentencing decisions is not sworn testimony.").

{¶ 25} Moreover, the information Safo maintains Tenisha would have provided had she been called to testify at trial would not have negated the testimony provided by Off. Thompson or the body-cam video. Tenisha was not physically present on the night in question, and much of her proposed testimony has no bearing on any of the elements of either offense of which Safo was convicted. Upon review, we find that Safo has failed to show that Tenisha's presumptive testimony would have assisted her defense. Accordingly, Safo's second assignment of error is overruled.

{¶ 26} Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's

convictions having been affirmed, any bail pending appeal is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
LISA B. FORBES, JUDGE

SEAN C. GALLAGHER, A.J., and
MARY EILEEN KILBANE, J., CONCUR